**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| AMERICAN RUBBER & METAL HOSE | : | CIVIL ACTION NO. 11-1279 (MLC) |
| CO., INC. & VITO POLERA, | : | |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| STRAHMAN VALVES, INC. & | : | |
| AUGIE PERCOCO, | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

Plaintiffs, Vito Polera ("Polera") and American Rubber &
Metal Hose, Co., Inc. ("American") (collectively "Plaintiffs")
brought this action against the Defendants, Strahman Valves, Inc.
("Strahman") and August F. Percoco (improperly pled as "Augie
Percoco") ("Percoco") (collectively "Defendants"), alleging
claims for: (1) breach of contract, (2) breach of fiduciary duty
(only against Percoco), (3) conversion, (4) breach of implied
covenant of good faith and fair dealing, (5) economic duress, (6)
unjust enrichment, and (7) attorneys' fees.  (Dkt. entry no. 1,
Rmv. Notice, Ex. A, Compl.)  Defendants removed to this Court and
now move to dismiss claim two, claim three, claim five, claim
six, and claim seven in their entirety, and claim one and claim
four insofar as they are asserted against Percoco, pursuant to
Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. entry
no. 5, Mot. to Dismiss.)  The Court determines the Motion without

oral argument.  Fed.R.Civ.P. 78(b).  The Court will grant the Motion in part and deny the Motion in part.

## BACKGROUND

Polera was previously the owner, or sole shareholder, of American.  (Compl. at ¶ 6; dkt. entry no. 5, Maloney Aff., Ex. B, Purchase Agreement at 1.)  On November 1, 2004, the parties entered into two agreements: (1) "Agreement for Sale and Purchase of Assets" ("Purchase Agreement") and (2) "Employment Agreement" (collectively, "Agreements").  (Purchase Agreement; Compl. at 21, Employment Agreement.)  The first was signed by Polera, as both an individual and as the President of American, and by Percoco as the President of Strahman.  (Purchase Agreement at 12.)  The second was signed by Polera as an individual and by Percoco as the President of Strahman.  (Employment Agreement at 7.)

The Purchase Agreement notes that American is "in the business of selling and distributing certain metal and rubber hoses, coupling and clamps."  (Purchase Agreement at 1.)  It purports to sell to Strahman "certain of the tangible and intangible assets of [American] used in the operation of [American's] Business," and also notes the mutual desire of the parties to have Polera work at Strahman as a sales person, "subject to the terms and conditions set forth in the Employment Agreement."  (Id.)  The "Purchase Price" in the Purchase Agreement appears to consist of three parts: (1) an initial

2

payment for "machinery identified on Schedule 1.1.1." and "other Acquired Assets," (2) a second payment for the value of American's "Inventory," upon a reconciliation of same, and (3) "contingent annual payments as set forth in the Employment Agreement."  (Id. at 4.)

The Employment Agreement, in turn, provides a formula for calculating Polera's compensation, which appears to be a combination of a set base salary and a profit-sharing component whereby Polera would receive a certain amount for exceeding certain sales targets.  (See Employment Agreement at 2-3.)  This section refers to the assets purchased by Strahman as the "Hose Division" and notes that "the Payments shall be due notwithstanding the fact [Polera's] employment is terminated for any reason . . . as the Payments do not represent additional compensation for services performed hereunder, instead the Payments represent a portion of the Purchase Price (as defined in the Purchase Agreement) paid by [Strahman] in connection with its purchase of the Hose Division."  (Id. at 3.)

According to the Complaint and documents attached therein, Polera received two payments from Strahman, totaling $167,000, and began working as an employee there pursuant to the Employment Agreement.  (Compl. at 18-19, Checks; id. at ¶ 11.)  Polera alleges that he performed as required under the Employment Agreement, but that Strahman and Percoco "failed to honor the terms of the agreements and provide support for the sales,

3

purchasing, assembly, and marketing" of American's products.
(Id. at ¶¶ 12, 17.)  As a result, Polera asserts, he resigned
from Strahman in September 2007.  (Id. at ¶ 19.)

**DISCUSSION**

**I.  Legal Standard for Motion to Dismiss**

A motion under Rule 12(b)(6) tests the legal sufficiency of
a complaint, and the Court must "accept all factual allegations
as true, construe the complaint in the light most favorable to
the plaintiff, and determine, whether under any reasonable
reading of the complaint, the plaintiff may be entitled to
relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d
Cir. 2008).  At this stage, a "complaint must contain sufficient
factual matter, accepted as true to 'state a claim to relief that
is plausible on its face.'  A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556
(2007)).  "[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged--but it has not 'show[n]'--that the
'pleader is entitled to relief.'"  Id. at 1950.  In evaluating a
Rule 12(b)(6) motion to dismiss for failure to state a claim, the
Court may consider the Complaint, exhibits attached thereto,

4

matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## II.  Legal Standard Applied Here

### A.  Breach of contract and implied covenant of good faith and fair dealing (claims one and four)

The Complaint alleges in claim one that the Defendants "did not honor," and "fail[ed] to perform their duties" pursuant to, the "express terms of the written agreements," which caused Plaintiffs to suffer damages.  (Compl. at ¶¶ 21-22.)  It further alleges in claim four that Defendants' conduct constituted breach of the implied covenant of good faith and fair dealing.  (Id. at ¶ 33.)  Defendants contend that claim one and claim four should be dismissed insofar as they are asserted against Percoco because he was not a party to the Agreements, but merely signed on behalf of Strahman.  (Dkt. entry no. 5, Def. Br. at 8-9.)  Plaintiffs concede that only parties to a contract can commit these breaches, but they contend that because Percoco was a "signatory" who "executed said agreements on Defendants' behalf," he can be liable "as a matter of law."  (Dkt. entry no. 8, Pl. Br. at 7-8.)

"It is a basic tenet of corporate law that a corporation is an entity separate and distinct from its shareholders."  Kennedy Funding, Inc. v. Lion's Gate Dev., LLC, No. 05-4741, 2006 WL 1044807, at *7 (D.N.J. Apr. 18, 2006) (granting defendant's

motion to dismiss breach of contract and good faith counterclaims against individual defendants).  "[I]n the absence of a basis for piercing the corporate veil, an officer is not liable for the contractual obligations of a corporation."  Home Buyers Warranty v. Roblyn Dev. Corp., No. A-0500-05T5, 2006 WL 2190742, at *4 (N.J. App. Div. Aug. 4, 2006) (holding officer not personally liable even where he signed contract without noting his corporate title).  In Royale Luau Resort, LLC v. Kennedy Funding, Inc., No. 07-1342, 2008 WL 482327, at *8-9 (D.N.J. Feb. 19, 2008), the court dismissed breach of contract and implied covenant of good faith and fair dealing claims where an individual defendant, as president of the corporate defendant, could not be "liable for breach of contract in this circumstance where he simply signed on behalf of the corporate entity."[1]

The Complaint states that Percoco executed the agreement "on behalf of" Strahman.  (Compl. at ¶ 11.)  An inspection of the Agreements confirms Percoco signed as Strahman's President.  (See Agreements.)  Neither party has alleged otherwise.  Thus, the Court concludes Percoco, signing on behalf of the corporate entity, cannot be individually liable for breach of contract or implied covenant of good faith and fair dealing here.

---

[1] Hicks v. Mulhallan, No. 07-1065, 2008 WL 1995143, at *2 (D.N.J. May 5, 2008), also cited by Defendants, is not helpful because it was decided on a motion for summary judgment and the president of the corporation was not a signatory to the contract.

Plaintiffs alternatively argue that Percoco is a third-party beneficiary ("TPB") of the contract, and that under New Jersey law this is sufficient for liability to attach.  (Pl. Br. at 8.)  "To qualify as a [TPB] it must be shown that the contract was 'made for the benefit of that third party within the intent and contemplation of the contracting parties.'"  Hadley v. Shaffer, No. 99-144, 2003 WL 21960406, at *5 (D. Del. Aug. 12, 2003) (citing Grand St. Artists v. Gen. Elec. Co., 19 F.Supp.2d 242, 253 (D.N.J. 1998)).  The Court looks to the terms of the contract and the surrounding circumstances to determine whether the contracting parties intended the individual to be a TPB.  The primary focus of this inquiry is the intent of the parties.  See E.I. DuPont & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 197 (3d. Cir. 2001) (declining to enforce an arbitration clause because there was no evidence that the parent was "anything more than an incidental beneficiary").  Without this intention to confer a benefit, the third party just so happens to benefit and he or she will have no contractual rights under the agreement.  See Reider Cmtys., Inc. v. N. Brunswick Twp., 227 N.J. Super. 214, 222 (N.J. App. Div. 1988) (incidental TPBs have no cause of action to enforce contractual promises).  The court in Construcciones Haus Soceidad v. Kennedy Funding Inc. dismissed the plaintiffs' TPB claim, noting the complaint was "devoid of any allegations that would indicate that

e[i]ther [of the defendants not a party to the contract] were intended beneficiaries." No. 07-392, 2008 WL 1882857, at *3 (D.N.J. Apr. 24, 2008) (citing <u>JM Realty & Invs., LLC v. Kennedy Funding, Inc.</u>, No. 07-218, 2007 WL 2159563, at *2 n.3 (D.N.J. July 26, 2007)).

The Complaint here similarly does not allege that Percoco was an intended beneficiary of either contract. Moreover, the Complaint alleges that Percoco advised Polera that "it was not the intention of <u>Defendant [Strahman]</u> to honor the terms of the agreements" and that "<u>Defendant [Strahman]</u> 'wanted no part' of" Polera's business, not that Percoco sought these ends personally or individually. (Compl. at ¶ 18 (emphasis added).) Nor does the Complaint allege that Percoco personally benefitted from the Agreements or their alleged breach. Finally, the Complaint does not allege Strahman is an alter-ego of Percoco, so as to justify piercing the corporate veil. <u>See</u> <u>Plastipak Packaging, Inc. v. DePasquale</u>, 75 Fed.Appx. 86, 88 (3d Cir. 2003).[2] Thus, the Court will grant the Motion as it pertains to claim one and claim four, insofar as they are asserted against Percoco.

---

[2] To the extent Plaintiffs argue Percoco as President officer somehow interfered with the performance of the contract (<u>see</u> Pl. Br. at 8) <u>see</u> <u>Zeiger v. Wilf</u>, 333 N.J. Super. 258, 284 (N.J. App. Div. 2000), <u>Moe v. Seton Hall Univ.</u>, No. 09-01424, 2010 WL 1609680, at *9 (D.N.J. Apr. 20, 2010), the Complaint does not allege such a claim or its necessary elements.

**B.    Breach of fiduciary duty against Percoco (claim two)**

The Complaint alleges that Percoco, in his position as "Chief Executive Officer" of Strahman, was "under a common law and statutory duty to act, with respect to [Strahman] affairs, in good faith and with loyalty to [Strahman], including its wholly owned subsidiary, [American]" and that Percoco "breached his fiduciary duty to Plaintiffs by failing to adhere to the terms of the Agreements." (Compl. at ¶¶ 26-27.)  Defendants contend this should be dismissed because Percoco owed no fiduciary duty to American, because it was not actually a wholly-owned subsidiary of Strahman. (Def. Br. at 11.)  Plaintiffs dispute this assertion and claim American was, or was "for all practical purposes" a wholly-owned subsidiary. (Pl. Br. at 9.)  Even if American was a wholly-owned subsidiary, Defendants continue, Polera would have no standing to bring a shareholder claim on behalf of American. (Def. Br. at 11 n.3.)

"[T]o state a claim for breach of fiduciary duty under New Jersey law, Plaintiffs must allege: (1) a fiduciary relationship comprised of 'two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship,' and (2) a 'violation of that trust.'" Wiatt v. Winston & Strawn, LLP, No. 10-6608, 2011 WL 2559567, at *9 (D.N.J. June 27, 2011) (citing F.G. v. MacDonell, 150 N.J. 550, 563-65 (1997)).  "New Jersey law makes clear . . .

9

that determining whether a fiduciary relationship exists between two parties is a fact sensitive inquiry. [F.G., 150 N.J. at 563-64] (citing Bogert, Trusts and Trustees 2d § 481 (1978) (in which the New Jersey Supreme court states '[t]he exact limits of the term 'fiduciary relation' are impossible of statement [and that the finding of such a relationship depends] upon the circumstances of the particular case or transaction, certain business, public or social relationships may or may not create or involve a fiduciary character.')." Sunset Fin. Res., Inc. v. Redev. Grp. V, LLC, Nos. 05-2914, 05-2915, 2006 WL 3675384, at *7 (D.N.J. Dec. 12, 2006).

"In general, the relationship of a corporate director to the corporation and its stockholders is that of a fiduciary." Whitfield v. Kern, 122 N.J.Eq. 332, 341 (E. & A. 1937).  It follows that corporate directors do not owe a fiduciary duty to non-shareholders.  U.S. Small Bus. Admin. v. Katawczik, 107 Fed.Appx. 281, 286 (3d Cir. 2004) (noting corporate officer defendants "had no fiduciary duty to disclose" an offer to non-shareholder plaintiff).

The Court, accepting all alleged facts as true for purposes of this Motion, assumes, as Plaintiffs allege, that American is a wholly-owned subsidiary of Strahman.  (See Compl. at ¶¶ 10, 26.) Plaintiffs have also alleged some facts that tend to demonstrate this: (1) a 2004 press release issued by Strahman calling American a "wholly owned subsidiary" (Compl. at 20), (2) the

reference to the "Hose Division" in the Employment Agreement
(Employment Agreement at 1, 2), and (3) that a portion of
Purchase Agreement is tied to the performance of Hose Division,
in that the purchase price in the Purchase Agreement consists, in
part, of "(iii) contingent annual payments as set forth in the
Employment Agreement as defined in Section 4.1 hereto (see
Purchase Agreement at Art. 2.1)."  (Purchase Agreement at 4.)
The Court further notes that the Purchase Agreement is effective
November 1, 2004, whereas according to the New Jersey Business
Entity Status Reports ("BESR"), the last annual report was filed
on June 20, 2005, more than six months after the Purchase
Agreement took effect.  (Maloney Aff., Ex. C, BESR (though
admittedly the next line states "For Last Annual Report Paid
Year: 2004").)

Beyond the question of whether American is, or was intended
to be, a wholly-owned subsidiary of Strahman, another is whether
Polera then has standing to bring this claim.  It is not clear
whether American even exists anymore.  Defendants call it
"defunct."  (Def. Br. at 11.)  The Complaint somewhat confusingly
alleges that Strahman purchased "the assets" of American, but
that American then became a wholly-owned subsidiary.  (Compl. at
¶ 10.)  But Plaintiffs further assert in their opposition to the
Motion that "Strahman and Percoco purchased" Polera's business;
"American was purchased by Strahman;" "American was an

11

independent business in name only;" and "American ceased to exists as a separate business entity."  (Pl. Br. at 1, 2.)

The Purchase Agreement appears to indicate that American sold certain assets to Strahman, but not everything.  (See Purchase Agreement.)  The BESR indicates American consists (or consisted) of 1,000 shares, but neither the parties nor the Purchase Agreement address these shares.  (BESR.)  But the BESR also indicates American's status as a corporation has been revoked.  (Id.)  It is difficult to comprehend how American could be a wholly-owned subsidiary of Strahman and yet still be owned even in part by Polera.  Nor has Polera alleged that he owns any shares in either of the business entities that could potentially claim to be American.

The Court also notes, however, that the Employment Agreement specifically provides for Polera to receive payments from Strahman based on the profits earned by whatever entity was sold to Strahman.  (Employment Agreement.)  The Employment Agreement refers to this entity as the "Hose Division."  (Id.)  The Employment Agreement also notes that these payments represent "a portion of the Purchase Price" paid by Strahman for the entity. (Id. at ¶ 4(a)(3)(vi).)[3]  It also appears to provide for Polera

---

[3] The Court notes the Purchase Agreement calls for monies to be paid to "Seller," i.e., American, but the sale in the Purchase Agreement is conditioned on the execution of the Employment Agreement, which calls for monies to be paid to Polera.

to share in losses.  (See id.)  But it does not appear to recognize Polera as the continued owner of said entity, or assign him any shares or voting rights.  (See id.)

To bring a claim for breach of fiduciary duty on American's behalf against Percoco, if American is a wholly-owned subsidiary as alleged in the Complaint, then it appears Polera must allege he was a shareholder of the entity.  (Compl. at ¶ 26.)  See Valle v. N. Jersey Auto. Club, 74 N.J. 109, 111 (1977) (citing N.J.S.A. 14A:3-6(1)).  As Polera has not done so, as Defendants argue, he has not demonstrated standing to sue.  (Def. Br. at 11 n.3.)  Moreover, the wholly-owned subsidiary assertion is potentially in conflict with, among others, the statement that Polera was "[a]t all times relevant to the allegations set forth in this Complaint . . . the owner of Plaintiff [American] and/or an employee of Defendant [Strahman]."  (Compl. at ¶ 6.)[4]

It might be a different matter if the breach of fiduciary duty claim was, for example, based equitably upon Polera's "trust and confidence" in Percoco, alleging that Percoco owed Polera a duty to advance the business entity purchased from American, such as it was, since Polera agreed to tie part of the Purchase Price to this business entity's continued success.  See Bogert's Trusts And Trustees, BOGERT § 481 (2010) ("Equity refuses to bind itself

---

[4] Of course, if the Complaint alleged a duty to a still-independent American, it is not clear how Percoco would owe one.

by an all-inclusive definition. . . . the facts and circumstances will determine whether the fiduciary relationship is present or not regarding relationships such as . . . employer and employee . . . .”).  But the pleadings here rest the claim upon an alleged duty to American, not Polera.  (<u>See</u> Compl. at ¶ 26.)  Even if the opposite were the case, the Court would then have to consider whether an adequate contractual remedy at law already existed instead.  <u>See</u> <u>Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.</u>, 988 F.2d 414, 432-33 (3d Cir. 1993) (affirming conclusion of no fiduciary duty, in part because of adequate remedy at law).  The Court concludes that the confusing, seemingly conflicting, factual allegations Plaintiffs have set forth in the Complaint do not “raise a right to relief above the speculative level.”  <u>Twombly</u>, 127 S.Ct. at 1965.  The Court will dismiss claim two without prejudice.

### C.  Conversion (claim three)

The Complaint next alleges that Defendants “intentionally and wrongfully exercised ownership, control and/or dominion over Plaintiffs’ property and funds, and converted those funds to their own use.”  (Compl. at ¶ 30.)  Defendants argue the tort of conversion is not applicable here because a “mere debt” is at issue, as Plaintiffs’ cause of action “arises exclusively from Strahman and Mr. Percoco’s alleged failure to remit funds purportedly due to plaintiffs” under the Agreements.  (Def. Br.

at 13-15.)  Plaintiffs counter that more than money is at issue, namely the machinery and inventory formerly held by American. (Pl. Br. at 10.)  Defendants respond (in a rather tortured reading of the Complaint) that Plaintiffs only allege the conversion of "funds," not property, but in any case the property was purchased as per the Purchase Agreement, and thus was not converted.  (Dkt. entry no. 10, Def. Reply at 6 n.3, 7-8.)

A conversion claim in New Jersey is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 83 (N.J. App. Div. 1988).  However, "[a]n action for conversion will not lie in the context of a mere debt." Scholes Elec. & Commc'ns., Inc. v. Fraser, No. 04-3898, 2006 WL 1644920, at *5 (D.N.J. June 14, 2006).  Because a monetary loss can be repaid in whole by other money, allegedly converted money is deemed a mere debt unless there is a requirement that the "identical money" be repaid. Kam Int'l. v. Franco Mfg. Co. Inc., No. 10-2733, 2010 WL 5392871, at *5 (D.N.J. Dec. 22, 2010) (where plaintiff's claim did not "allege a mere debt" because the allegedly converted property was textiles).

The Court will not, at the stage, interpret the Agreements. However, the Court notes that the Purchase Agreement authorizes

15

the transfer of ownership of certain tangible assets, whereas conversion requires <u>unauthorized</u> assumption of ownership.  <u>See Pension Benefit</u>, 998 F.2d at 1196 n.1 (considering "the concededly authentic purchase and sale agreement that [defendant] attached to its motion to dismiss").  The alleged failure to fulfill the requirements of the purchase of said assets sounds in contract, not tort.  <u>See</u> <u>O'Toole v. Philips Elecs. N. Am. Corp.</u>, No. 04-1730, 2006 WL 3019698, at *6 (D.N.J. Oct. 23, 2006) (granting summary judgment on conversion claim where dispute was over payment under a contract, not unauthorized exercise of dominion over plaintiff's property).  Thus, Plaintiffs cannot succeed on a conversion claim.  The Court will grant the Motion as to claim three.

**D.  Economic duress (claim five)**

The Complaint alleges both that (1) Defendants "knowingly, intentionally, maliciously, and repeatedly threatened [Polera] in an effort to force him against his will to voluntarily agree to alter the clear and unambiguous written terms of the agreements and/or terminate the agreements between the parties" and (2) "[Polera] acquiesced to their demands and voluntarily agreed to forfeit monies owed to him under fear of economic duress and hardship".  (Compl. at ¶¶ 36, 39.)  Defendants claim that economic duress does not exist as a separate cause of action under substantive New Jersey state tort law, but that it is

16

merely an affirmative defense to avoid the operation of a contract.  (Def. Br. at 16-17; Def. Reply at 8-9.)  Plaintiffs further cite authority they claim supports the argument that this cause of action is not barred in New Jersey, and that pleading it in the alternative to breach of contract is permissible.  (Pl. Br. at 11-12.)

"Although New Jersey courts recognize economic duress as a defense or a basis for contract recision, the courts do not yet recognize economic duress as an affirmative tort action in New Jersey."  Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J. Super. 468, 479 (N.J. Law Div. 1992), aff'd, 275 N.J. Super. 134 (N.J. App. Div. 1992.).  "New Jersey law does not currently recognize economic duress as an affirmative cause of action." Coastal Grp., Inc. v. Westholme Ptnrs., No. 94-3010, 1996 WL 33545605, at *11 (D.N.J. Oct. 3, 1996) (citing id.; Glenfed Finan. Corp. v. Penick Corp., 276 N.J. Super. 163, 173 (N.J. App. Div. 1994)).  Plaintiffs do not cite, nor has the Court found, any more recent authority that contradicts this case law.

The Court also rejects Plaintiffs' alternative pleading argument, because it does not appear that in this instance Plaintiffs are attempting to use economic duress as a defense to invalidate any other contract: while the Complaint alleges that Defendants attempted to force him to alter the Agreements (Compl. at ¶ 36), it does not then allege that Polera actually agreed to

17

alter them, even under duress.  "Thus, because the cause of action simply does not presently exist," the Court, "applying New Jersey law, has no choice but to dismiss" claim five of the Complaint.  See Coastal Grp., 1996 WL 33545605, at *11.

### E.   Unjust enrichment (claim six)

The Complaint also alleges that Defendants have been unjustly enriched as a result of their failure to honor the terms of the Agreements, because Plaintiffs incurred damages that Defendants would otherwise have been required to pay.  (Compl. at ¶¶ 43-44.)  Defendants argue the unjust enrichment claim should be dismissed because it is a quasi-contractual remedy that is not applicable and cannot be pleaded if an express contract exists. (Def. Br. at 19-20; Def. Reply at 12-13.)  As above, Plaintiffs assert that unjust enrichment is a permissible alternative pleading to breach of contract.  (Pl. Br. at 13.)

"To establish a claim for unjust enrichment, 'a plaintiff must show that defendant received a benefit and that retention of that benefit without payment would be unjust.'"  VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994); see Cameco, Inc. v. Gedicke, 299 N.J. Super. 203, 218 (N.J. App. Div. 1997). Recovery for unjust enrichment, however, is an equitable remedy that is only available when there is no express contract providing for remuneration.  See Caputo v. Nice-Pak Prods., 300 N.J. Super. 498, 507 (N.J. App. Div. 1997).

Even where an unjust enrichment claim is not based on an express contract, the pleading can still go awry.  In Oswell v. Morgan Stanley Dean Witter & Co., Inc., the plaintiff appeared to seek relief for unjust enrichment while also incorporating her breach of contract claim.  No. 06-5814, 2007 WL 1756027, at *9 (D.N.J. June 18, 2007).  Specifically, within the plaintiff's unjust enrichment claim, the plaintiff "incorporated [the preceding allegations of the Complaint] as if set forth at length herein," and this included an allegation that a contract existed between the parties and the defendant breached that contract. Id.  The Oswell court determined this was improper "because an unjust enrichment claim must be independent of a breach of contract claim and a Plaintiff may not bring an unjust enrichment claim while also pleading the existence of a contract."  Id. (dismissing unjust enrichment claim, but granting leave to amend Complaint to make it independent of the contract claim).

Plaintiffs here similarly pleaded breach of contract in paragraph 20 of the Complaint, then paragraph 42 at the beginning of the unjust enrichment claim states "Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-41 as if fully set forth here at."  (Compl. at ¶¶ 20, 42.)  Beyond technicality, the Court notes that Plaintiffs also specifically allege unjust enrichment "[a]s a result of Defendants' failure to honor the clear and unambiguous terms of the[] agreements between the

19

parties." (Id. at ¶ 43.) See Premier Pork L.L.C. v. Westin, Inc., No. 07-1661, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008) (dismissing unjust enrichment claim where Amended Complaint alleged "Defendants had a benefit conferred upon them by [Plaintiff] in that [Plaintiff] has completed its contractual obligations by shipping" and "[i]t would be inequitable for Defendants to enjoy the benefits . . . without [Plaintiff] receiving the contracted for compensation that it is owed") (internal citations omitted).  Because the unjust enrichment claim in the Complaint is based on the alleged Agreements, the Court will grant the Motion as it pertains to claim six.

### F.   Attorneys' fees (claim seven)

The Complaint seeks attorneys' fees.  (See Compl.) Defendants argue Plaintiffs cannot obtain attorneys' fees under New Jersey state law.  (Def. Br. at 23-24.)  Plaintiffs argue they may recover where such fees are provided for in a contract. (Pl. Br. at 13.)  New Jersey law follows the "American rule," which "has long been that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."  In re Estate of Lash, 169 N.J. 20, 43 (2001).  The New Jersey Court Rules specifically prohibit attorneys' fees except for a few limited exceptions, none of which appear to apply here.  N.J. Ct. R. 4:42-9; see also McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 (3d Cir. 1990)

As Defendants point out, while Plaintiffs "respectfully assert that the provisions of the agreements . . . provide for" attorneys' fees, Plaintiffs have not asserted or demonstrated where an attorneys' fees provision actually exists in the Agreements, outside of a reference to arbitration.  (Def. Reply at 13-14; Pl. Br. at 13.)  Nor has the Court's perusal of the Agreements revealed any such reference.  The Court will thus dismiss claim seven without prejudice, with leave to file an Amended Complaint with citation to the specific provisions in the Agreements that provide for the recovery of attorneys' fees.[5]

## CONCLUSION

For the reasons discussed, the Court will grant the Motion. The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: July 22, 2011

---

[5] As it appears Plaintiffs will seek leave to amend the Complaint to assert punitive damages, if it becomes appropriate, the Court will defer consideration of this aspect of the claim until such time, and upon new notice of motion by Defendants. (See Pl. Br. at 14.)  The Court will do the same if Plaintiffs amend the Complaint to properly plead a common law breach of fiduciary duty, as attorneys' fees may be available there as well.  See DiMisa v. Acquaviva, 400 N.J. Super. 307, 315 (N.J. App. Div. 2008)("[b]reach of fiduciary duty is a tort theory, such that attorneys' fees incurred as a result of that breach may be recoverable as a portion of the plaintiff's damages").